IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| GEORGE WEEKS, | CV 20-00001-H-DLC-JTJ |
| Plaintiff, | |
| vs. | ORDER AND FINDINGS AND RECOMMENDATIONS OF U.S. MAGISTRATE JUDGE |
| DR. HURST and NP COZBY, | |
| Defendants. | |

Plaintiff George Weeks is a prisoner proceeding pro se on a claim of Eighth Amendment violations under 42 U.S.C. § 1983. There are five motions pending before the Court in this matter, including a fully briefed motion for summary judgment. The case was temporarily stayed at Weeks' request until July 31, 2021. (Doc. 38.) The Court is now prepared to rule. The motions to compel (Doc. 24) and to modify the scheduling order (Doc. 27) are denied as moot. The motions for an expert witness (Doc. 23) and counsel (Doc. 27) are denied. Defendants' motion for summary judgment (Doc. 30) should be granted, as explained below.

Case 6:20-cv-00001-DLC   Document 42   Filed 09/09/21   Page 2 of 16

The factual background of Weeks' claims was detailed in this Court's prior order (Doc. 7) and will not be repeated here except to the extent that any facts are relevant to the motion for summary judgment.

I.  Defendants' Motion for Summary Judgment

Defendants Jodi Cozby[1] and Jack Hursh[2] have filed a motion for summary judgment. (Doc. 30.) They assert two grounds upon which they are entitled to judgment: neither defendant was deliberately indifferent to Weeks' serious medical needs, and both are entitled to qualified immunity. (Doc. 31.) The motion is fully briefed. The Court will address each issue in turn.

A.  Standard for Summary Judgment

Federal Rule of Civil Procedure 56(a) entitles a party to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The movant bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, which it believes demonstrate

---

[1] The caption has been corrected to reflect the accurate spelling of Defendant Cozby's name.

[2] On July 14, 2021, Defendants' counsel notified the Court of the death of Defendant Dr. Hursh. (Doc. 40.)

the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party has satisfied its burden, the non-moving party must go beyond the pleadings and designate by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Id.* at 324. The Court views the facts and inferences from them in the light most favorable to Weeks as the non-moving party. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 474 U.S. 574, 587-88 (1986); *Betz v. Trainer Worthham & Co., Inc.*, 504 F.3d 1017, 1020-21 (9th Cir. 2007).

B. Analysis

1. Deliberate indifference

In *Estelle v. Gamble,* the U.S. Supreme Court held that an inmate making a Eighth Amendment claim based on prison medical treatment must show "deliberate indifference to serious medical needs." 429 U.S. 97, 104 (1976). In the Ninth Circuit, the test for deliberate indifference to medical needs is two-pronged: (1) "the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain"; and (2) "the plaintiff must show the defendant's response to the need was deliberately indifferent." *Wilhelm v. Rotman*,

680 F.3d 1113, 1122 (9th Cir. 2012) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)).

The second prong requires a showing of: "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Wilhelm*, 680 F.3d at 1122 quoting *Jett*, 439 F.3d at 1096. "Such indifference may be manifested in two ways. It may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Hutchinson v. U.S.*, 838 F.2d 390, 394 (9th Cir. 1988) (citing *Estelle*, 429 U.S. at 104-05).

In *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court established a very demanding standard for "deliberate indifference." Negligence is insufficient. *Farmer*, 511 U.S. at 835. Deliberate indifference is established only where the defendant subjectively "knows of and disregards an excessive risk to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (internal citation omitted). Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal citations omitted). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled on other grounds, Peralta*

4

*v. Dillard*, 744 F.3d 1076, 1082-83 (9th Cir. 2014 (citation and quotation marks omitted); *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012).

    a.  Cozby was not deliberately indifferent.

Nurse Cozby claims that she saw Weeks only once after his fall, on January 31, 2019, and he did not tell her anything about it. (Docs. 31 at 9; 32 at 3-4.) The appointment was scheduled prior to the fall, to discuss Weeks' headache and glaucoma-related complaints. *Id.* Cozby contends that she did not see any external manifestations of a serious back injury at this appointment, and her notes from the appointment do not mention back pain complaints. *Id*. (Doc. 32-3.) Weeks submitted a kite that same day recounting aspects of the appointment. (Doc. 32 at 4; Doc. 32-3.) Cozby asserts that she could not have been deliberately indifferent to a need she did not know about or see evidence of, especially when Weeks had the opportunity to discuss it with her and did not.

Weeks disputes this argument factually. He denies Cozby's claim that they did not speak about his injury. (Doc. 36 at 1.) He also asserts that Cozby performed tests on his back, apparently intending to refute Cozby's observation that she saw no manifestation of back injury. *Id.* But Weeks does not have any contemporaneous documentary or other evidence, such as Cozby has. He cannot explain why her progress notes, which covered several issues, did not mention back pain. Nor does he explain why his follow up kite to her did not mention

5

anything about his back. He did speak with another provider about his back and shoulder and mentioned the fall on January 30, 2019, but there is no evidence he spoke with Cozby about it. (Doc. 32-3 at 19.) Weeks has not created a genuine issue for trial by his plain assertion of "not true" in response to Cozby's records. Weeks did not manifest a serious medical need to Cozby, either verbally or medically, and he cannot establish that she was deliberately indifferent to any such need.

Cozby never saw Weeks clinically again. (Doc. 32 at 4.) Weeks has failed to raise a genuine issue of material fact that Cozby knew of his serious medical need and was deliberately indifferent. She should be granted summary judgment.

b.  Hursh was not deliberately indifferent.

The crux of the disagreement between the parties as to Dr. Hursh is what level of care was constitutionally sufficient. Dr. Hursh asserts that he did not initially know the extent of Weeks' injury, but even if he had, he would have treated it the same. He saw Weeks on February 1, 2019, at a previously scheduled appointment for his headache pain. (Doc. 32 at 4.) (The record shows that Weeks' medical preoccupation during this time was his headaches. He was seen many times for that reason. (*See*, *e.g.*, Doc. 32-3 at 2, 6-11,13,16-17, etc.)) Hursh's notes do not reflect any discussion of back pain. (Doc. 32 at 5.) Hursh also contends that even if they had discussed back pain, because Weeks was not suffering from

neuromuscular involvement or other difficulties, he would not have recommended anything more at that point than ibuprofen and stretching. (Doc. 32 at 5; Doc. 31 at 13.) When Weeks' back pain did not resolve, he was seen by another nurse, Julie Shute, on April 3. Shute ordered x-rays, prescribed ibuprofen, and recommended stretching and exercise. (Doc. 31 at 13-14.) Shute saw Weeks again on April 18 to discuss the x-rays. (Doc 32 at 23.) At this point, she recommended further follow up with Dr. Hursh and the pain committee. On May 10, when Dr. Hursh saw Weeks specifically for his back pain and reviewed the x-rays, Hursh's determination was that ibuprofen and stretching were still the appropriate care. (Doc. 32-3 at 42.)

Weeks simply disagrees, contending that "ibuprofen and stretching are [not] an appropriate treatment." (Doc. 35 at 2.)  He further asserts that "standard of care protocols dictate the best course of treatment that returns the patient to the closest pre-existing condition as possible." Weeks does not explain what would have been appropriate—surgery, traction, who knows what. He just disagrees with the treatment he received.

"A difference of opinion between a physician and the prisoner - or between medical professionals - concerning what medical care is appropriate does not amount to deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 987 (9th Cir. 2012) (*overruled on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir.

2014)); *Wilhelm*, 680 F.3d at 1122-23 (*citing Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1986)). Rather, a plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to [his] health." *Snow*, 681 F.3d at 988 (*citing Jackson*, 90 F.3d at 332) (internal quotation marks omitted).

Weeks has failed to carry this burden or raise a material fact that Hursh was deliberately indifferent to his serious need. Hursh saw Weeks specifically for this back pain one time, on May 10, and treated him, choosing what may have been a conservative treatment. Upon reviewing the x-rays, Hursh was unsure of the cause of this injury of "indeterminate age," given Weeks' extensive history of car and motorcycle crashes, climbing falls, skydiving accidents, and logging mishaps. (Doc. 32-3 at 72-73.) Weeks had also reported joint and back pain upon arrival at MSP. (Doc. 32-3 at 3.) Hursh was not convinced that this was a recent injury, but in any event, he treated it. He did not disregard it. Weeks was also then seen by the pain management committee. (Doc. 32-3 at 43.) Hursh did not see Weeks clinically again, because Weeks left MSP on June 4, 2019. (Doc. 32 at 10.) Hursh is entitled to summary judgment. *Sandoval v. Cty. of San Diego*, 985 F.3d 657, 667–68 (9th Cir. 2021).

 2.  Qualified immunity

Defendants' second argument is that they are entitled to qualified immunity for their treatment of Weeks. (Doc. 31 at 10.) The doctrine of qualified immunity protects government officials from civil liability where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "'Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments,' and 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Stanton v. Sims*, 572 U.S. 3, 6 (2013) (citations omitted).

To determine if an official is entitled to qualified immunity the court considers two factors:  whether the facts as alleged state a violation of a constitutional right, and whether the right is clearly established, such that a reasonable official would have known that his or her conduct was unlawful. *Saucier v. Katz*, 533 U.S. 194, 200 (2001); *Sandoval v. Cty. of San Diego*, 985 F.3d 657, 671 (9th Cir. 2021). A district court is "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

In the Eighth Amendment context, "a reasonable prison official understanding that he cannot recklessly disregard a substantial risk of serious

harm, could know all of the facts yet mistakenly, but reasonably, perceive that the exposure in any given situation was not that high. In these circumstances, he would be entitled to qualified immunity." *Sandoval v. Cty. of San Diego*, 985 F.3d 657, 674–75 (9th Cir. 2021) (internal quotations and citations omitted). As such, to defeat qualified immunity for the defendants, Weeks must show that, given the available case law at the time, a reasonable nurse or doctor, knowing what Cozby and Hursh knew, would have understood that treating Weeks' fracture conservatively, as they did, "presented such a substantial risk of harm to [him] that the failure to act was unconstitutional." *Horton*, 915 F.3d at 600. He does not carry this burden.

As to Cozby, Weeks has not established that she was even aware of his fall or his back pain. Weeks saw Cozby before x-rays had been taken and only a short time after his fall, so he cannot even establish that she would have reason to know of his vertebral fracture. As explained above, Cozby did not violate Weeks' constitutional rights, and she is entitled to qualified immunity.

As to Hursh, though at some point his subjective knowledge was greater than Cozby's, the analysis is no different. After x-rays were taken, and Weeks saw Hursh for his back pain, Hursh knew that Weeks had a compression fracture of unknown age. However, other than pain, Weeks had no other concerning symptoms regarding movement or other function. (Doc. 32 at 7-8.) Therefore,

Hursh chose pain management and stretching as the initial course of treatment. Weeks has not established that Hursh, at his first opportunity to consider Weeks' spinal condition, would have understood that treating Weeks' fracture conservatively, "presented such a substantial risk of harm to [him] that the failure to act was unconstitutional." *Horton*, 915 F. 3d at 600. Hursh is entitled to qualified immunity.

II.     Motion Requesting an Expert Witness (Doc. 23)

Weeks seeks appointment of an expert witness under Fed. R. Civ. P. 35(a). He claims that he needs an expert witness to provide the standard of care to the court, alleging that he is entitled to a level of treatment "the same as if I would have gone to an emergency room or walk in care provider outside of a prison environment." The expert would review the course of treatment and the time taken to get x-rays. (Doc. 23 at 3.) Defendants did not respond to this motion.

Though Weeks has moved under Fed. R. Civ. P. 35(a), it appears his request is more properly considered as falling under Fed. R. Evid. 706. A Rule 35 examination would result in a report of Weeks' condition, but it would not advise the Court on general retroactive questions such as standard of care or the appropriate course of treatment at the time in question, which is what Weeks appears to want. On the other hand, Fed. R. Evid. 706(a) allows the Court to appoint any expert witness that the parties agree on or any expert of the Court's

own choosing that could advise the Court about such topics. The Ninth Circuit

Court of Appeals has not ruled on the exact standard a district court should use in

analyzing such a motion, but other circuits have concluded that the district court

must provided a reasoned explanation for denial. *Gorton v. Todd*, 793 F. Supp. 2d

1171, 1178–79 (E.D. Cal. 2011).

      *Gorton v. Todd* provides a non-precedential framework for consideration of

a motion for appointment. The first factor is whether the testimony will promote

accurate fact finding.

> The touchstone is that expert witnesses should not be appointed
> under Rule 706 where not necessary or significantly useful for the
> *trier of fact* to comprehend a material issue in a case. Further, in
> order to demonstrate such necessity, there also must be some
> evidence, admissible or otherwise, that demonstrates a serious
> dispute that could be resolved or understood through expert
> testimony.

*Gorton v. Todd*, 793 F. Supp. 2d at 1181 (citations omitted and emphasis added).

      The second factor is whether a party can otherwise procure the testimony.

"Appointing expert witnesses under Rule 706 is rare given that the adversary

system is usually sufficient to promote accurate fact finding." *Cejas v. Paramo*,

No. 14-CV-1923-WQH(WVG), 2018 WL 3618236, at *1 (S.D. Cal. July 30,

2018). However, though an inmate may have difficulty presenting his or her case,

an expert should not be appointed solely to help a party present its case, but rather

only when it is necessary to aid the court. *Id.*

Finally, the court should consider the nature of the claim and the significance of the rights at stake. *Gorton*, 793 F. Supp. 2d at 1184.

Weeks' request for an expert to explain the standard of care misapprehends the determinative question at issue here. This is not a medical malpractice case, in which a doctor's liability may hinge on negligent failure to adhere to a standard of care. This is an Eighth Amendment constitutional claim, where the issue is whether the defendants' treatment of Weeks amounted to cruel and unusual punishment. That determination, the Ninth Circuit has held, requires an analysis of the state of mind of the defendants, whether it amounted to subjective deliberate indifference. *Sandoval v. Cty. of San Diego*, 985 F.3d 657, 667–68 (9th Cir. 2021). Whether Cozby and Hursh exhibited deliberate indifference to Weeks' serious medical needs does not involve complex questions of medical diagnosis and judgment that are beyond the ordinary comprehension of the Court.

> Succinctly put, "[e]xpert testimony is not required to adequately evaluate evidence of Defendants' state of mind at the time of the incident."…And, despite plaintiff['s] contrary assertion, because this case involves deliberate indifference and not medical malpractice, an expert is not needed to assist the fact finder "in determining and applying the appropriate standard of care[.]" ("The test for deliberate indifference is not as involved as that for medical malpractice, an objective inquiry that delves into reasonable standards of medical care.")

*Ellsworth v. Prison Health Servs., Inc.*, No. CIV 11-8070 PCT RCB, 2013 WL 6587876, at *8 (D. Ariz. Dec. 12, 2013).

The Court finds that an expert is not necessary in this case to analyze whether Defendants were deliberately indifferent to Weeks' medical needs. The undisputed facts regarding their treatment and knowledge of Weeks' condition are sufficient to analyze whether they were deliberately indifferent to his needs, regardless of whatever an objective description of the standard of care may reveal. Though Weeks likely cannot procure an expert on his own, and his Eighth Amendment rights are invaluable and must be protected, there is no legal reason an expert is needed in this context. The motion for an expert is denied.

III.    Motion to appoint counsel

As explained in this Court's order (Doc. 9) on Weeks' prior motion to appoint counsel (Doc. 8), Weeks does not have a constitutional right to counsel in a civil case. He has presented his case sufficiently and has not demonstrated the "exceptional circumstances" required for appointment of counsel. Therefore, the motion is denied.

Accordingly, the Court issues the following:

ORDER

1.    The motion to compel (Doc. 24) is DENIED as moot;

2.    The motion to modify the scheduling order (Doc. 27) is DENIED as moot;

3.    The motion for an expert witness (Doc. 23) is DENIED; and

14

4.      The motion for counsel (Doc. 34) is DENIED.

RECOMMENDATIONS

1.      Defendants' motion for summary judgment (Doc. 30) should be GRANTED.

2.      The Clerk of Court should be directed to close this matter and enter judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure.

3.      The Clerk of Court should be directed to have the docket reflect that the Court certifies pursuant to Rule 24(a)(3)(A) of the Federal Rules of Appellate Procedure that any appeal of this decision would not be taken in good faith.

**NOTICE OF RIGHT TO OBJECT TO FINDINGS AND RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT**

The parties may file objections to these Findings and Recommendations within fourteen days after service.[1] 28 U.S.C. § 636.  Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal. This order is not immediately appealable to the Ninth Circuit Court

---

[1] Rule 6(d) of the Federal Rules of Civil Procedure provides that "[w]hen a party may or must act within a specified time after being served and service is made under Rule 5(b)(2)(C) (mail) . . . 3 days are added after the period would otherwise expire under Rule 6(a)."  Therefore, since Weeks is being served by mail, he is entitled to an additional three days after the period would otherwise expire.

of Appeals. Any notice of appeal pursuant to Fed. R. App. P. 4(a), should not be filed until entry of the District Court's final judgment.

Dated this 9th day of September, 2021.

John Johnston
United States Magistrate Judge